**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

LAKESHA MILLBROOK                                                                    PLAINTIFF

v.                                          No. 4:06CV01103 JLH

DILLARD'S, INC.; DILLARD DEPARTMENT
STORES, INC.; W.D. COMPANY, INC.; and
DILLARD STORE SERVICES, INC.                                              DEFENDANTS


## OPINION AND ORDER

Lakesha Millbrook commenced this action on October 17, 2005, alleging claims of false imprisonment, assault, battery, negligence, defamation, outrage, invasion of privacy, alter ego, as well as claims arising under 42 U.S.C. §§ 1981, 1982, and 1983 against defendants Dillard's Inc., Dillard Department Stores, Inc., W.D. Company, Inc., and Dillard Store Services, Inc. Millbrook seeks compensatory damages, punitive damages, reasonable attorneys' fees and costs among other remedies. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as to the claims that arise under federal law. The Court has authority under 28 U.S.C. § 1367 to exercise supplemental jurisdiction over the state-law claims. On August 11, 2006, this Court granted summary judgment as to Millbrook's claims arising under 42 U.S.C. § 1983. The defendants have now moved for summary judgment on Millbrook's claims arising under 42 U.S.C. §§ 1981 and 1982, as well as her claims for outrage, false imprisonment, assault, battery, invasion of privacy, defamation, alter ego, past and future medical bills, and punitive damages. For the reasons stated below, the motion is granted in part and denied in part.

### I.

A court should enter summary judgment if the evidence, viewed in the light most favorable

to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Cheshewalla v. Rand & Son Constr. Co.*, 415 F.3d 847, 850 (8th Cir. 2005). The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party carries its burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting FED. R. CIV. P. 56(e)). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552.

## II.

On March 2, 2003, Millbrook went to Dillard's at Indian Mall in Jonesboro, Arkansas. While there, Millbrook tried on one pair of jeans that she decided not to purchase, but eventually completed purchase of another pair of jeans. Millbrook then went to a different area of the store to wait on a friend. Millbrook and her companions then exited Dillard's and entered the public area of the mall. As she entered the mall, a security officer in a police uniform, who was an off-duty police officer employed by Dillard's, approached her, grabbed her shoulder, and stated that he needed Millbrook to come back into Dillard's. The officer then accompanied Millbrook back into

Dillard's where they were joined by a Dillard's employee.  The officer and Dillard's employee escorted Millbrook into a room.  Millbrook's friend attempted to join them in the room, but the officer would not let him.

Once they were in the room, the officer stated that Millbrook was responsible for a missing pair of jeans.  Millbrook informed them that she had purchased a pair of jeans and offered her receipt as evidence.  According to Millbrook, the officer never looked at her receipt and searched her bag before he left the room.  When the officer left the room, he stood outside the room in front of the door, and the Dillard's employee was inside the room with Millbrook.  After about twenty minutes, the security officer came back into the room and told Millbrook that she was free to leave.

According to Millbrook, the incident caused her to start crying because she was hurt and embarrassed.  Furthermore, she stated that she has done a lot of crying at nights and has been fearful of being wrongly approached or accused.  After Millbrook left Dillard's, she went to her car for a period of fifteen to twenty minutes.  She then went back into the mall to continue to shop for approximately another hour or two, including a trip into the men's Dillard's.  Millbrook missed no work as a result of this incident, nor has she seen any doctors, psychologists, therapists, or counselors as a result of the incident.

### III.

Millbrook does not respond to the motion for summary judgment on her claims for alter ego, defamation, invasion of privacy, or her claims arising under 42 U.S.C. §§ 1981 and 1982.  Millbrook also does not dispute that there are no compensable past or future medical bills.  Additionally, Millbrook abandons and dismisses her claim for negligence.  Thus, summary judgment will be

granted on each of these claims.[1]

Although Millbrook does not explicitly concede the tort of outrage, neither did she brief this

claim.  In Arkansas,

> There are four elements that are necessary to establish liability for the tort of outrage:
> (1) the actor intended to inflict emotional distress or knew or should have known that
> emotional distress was the likely result of his conduct; (2) the conduct was "extreme
> and outrageous," was "beyond all possible bounds of decency," and was "utterly
> intolerable in a civilized community;" (3) the actions of the defendant were the cause
> of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was
> so severe that no reasonable person could be expected to endure it.

*Faulkner v. Arkansas Children's Hosp.*, 347 Ark. 941, 957, 69 S.W.3d 393, 403-04 (2002) (citing

*Crockett v. Essex*, 341 Ark. 558, 19 S.W.3d 585 (2000); *Deitsch v. Tillery*, 309 Ark. 401, 833

S.W.2d 760 (1992)).  In general, Arkansas "has taken a very narrow view of claims of outrage."  *Id.*

at 957, 69 S.W.3d at 404.  Arkansas also "requires clear-cut proof to establish the elements in

outrage cases."  *Allen v. Allison*, 356 Ark. 403, 416, 155 S.W.3d 682, 692 (2004).

As mentioned, in a motion for summary judgment, if the moving party carries its burden, "the

nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for

trial*.'"  Here, Millbrook has not offered sufficient evidence to show that there is a genuine issue for

trial on her claim of outrage.  Millbrook has not offered clear-cut proof showing that the officer and

---

[1]Ordinarily, this Court would decline to exercise supplemental jurisdiction over claims
arising under state law after dismissing all claims that arise under federal law.  However, the
history of this case justifies the exercise of supplemental jurisdiction.  Millbrook originally
asserted her state-law claims in a Missouri state court on February 27, 2004, in a case in which
she was one of seven plaintiffs.  The Missouri court dismissed the action based on forum non
conviens.  The original seven plaintiffs from the Missouri case and one additional person then
filed here, adding federal claims to the previously filed state-law claims.  On August 11, 2006,
this court dismissed several claims and severed the remaining cases.  After four years, this case is
ready for trial in less than a week.  It would be unfair to all parties to dismiss the state-law claims
without prejudice and send the parties to another court to start again.

Dillard's employee intended to inflict emotional distress or that they knew or should have known that emotional distress was likely, that the conduct was beyond all possible bounds of decency and utterly intolerable in a civilized society, or that Millbrook has suffered emotional distress so severe that no reasonable person could be expected to endure it.  The defendants' motion for summary judgment on Millbrook's claim for outrage is therefore granted.

With respect to Millbrook's claims for assault and battery, in Arkansas,

> Assault has been defined as an intentional attempt by a person, by force or violence, to do an injury to the person of another or as any attempt to commit a battery, or any threatening gesture showing in itself or by words accompanying it an immediate intention, coupled with a present ability, to commit a battery.  Battery is a wrongful or offensive physical contact with another through the intentional contact by the tortfeasor and without the consent of the victim, the unpermitted application of trauma by one person upon the body of another person.

*Costner v. Adams*, 82 Ark. App. 148, 156, 121 S.W.3d 164, 170 (2003) (citing 6 AM. JUR. 2D *Assault and Battery* §§ 1, 3 (1999)) (citations omitted).  "To constitute offensive contact for purposes of a battery claim, the contact must be offensive to a reasonable sense of personal dignity."  6 AM. JUR. 2D *Assault and Battery* § 3.  "Wrongful" contact generally does not mean "any unconsented . . . touching of another person."  *Id.* (noting only one court that had defined it as such).  Rather, "[p]ut another way, battery is the willful and harmful . . . touching of another person . . . ."  *Id.*

Here, Millbrook has provided no evidence that the officer's touching of her shoulder was offensive – Millbrok may have been offended by having been accused of shoplifting, but she has not stated that the mere touching of her shoulder by the officer was in and of itself offensive – nor was it harmful.  Millbrook has further provided no evidence that the touching of her shoulder was the unpermitted application of trauma by the officer on her body.  As to Millbrook's claim for assault, she has put on no evidence that: (1) the officer intentionally attempted, by force or violence, to do

injury to her person, (2) that he attempted to commit a battery, or (3) that he made any threatening

gesture showing an immediate intention, coupled with a present ability, to commit a battery.  The

defendants' motion for summary judgment with respect to Millbrook's claims for assault and battery

is therefore granted.[2]

> In Arkansas,
>
> False imprisonment has been defined as the unlawful violation of the personal liberty of another, consisting of *detention* without sufficient legal authority.  Any express or implied threat of force whereby one is deprived of his liberty or compelled to go where one does not wish to go is an imprisonment. . . .
>
> It is well established that the restraint constituting a false imprisonment may be by threats of force which intimidate the plaintiff into compliance with orders.  Although the plaintiff is not required to incur the risk of personal violence by resisting until force is actually used, it is essential that the restraint be against the plaintiff's will.  Submission to the mere verbal direction of another, unaccompanied by force or threats of any character, does not constitute false imprisonment.

*Limited Stores, Inc. v. Wilson-Robinson*, 317 Ark. 80, 83-84, 786 S.W.2d 248, 250 (1994) (citations

omitted).  "'Every confinement of the person is an imprisonment, and any express or implied threat

of force whereby one is deprived of his liberty or compelled to go where he does not wish to go is

---

[2] The Restatement (Second) of Torts § 21 defines the tort of assault as follows: "An actor is subject to liability to another for assault if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension."  Here, Millbrook has put on no evidence: (1) that the officer intended to cause a harmful or offensive contact, (2) that the officer intended to cause imminent apprehension of such a contact, or (3) that she was put in such imminent apprehension.

The Restatement (Second) of Torts § 13 defines the tort of battery as follows: "An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results."  Here, Millbrook has put on no evidence: (1) that the officer intended to cause a harmful or offensive contact, (2) that the officer intended to cause imminent apprehension of such a contact, or (3) that the contact that took place was harmful.  Therefore, Millbrook's claims for assault and battery fail also under tort law as provided by the Restatement (Second) of Torts.

an imprisonment.'" *Pettijohn v. Smith et al.*, 255 Ark. 780, 783, 502 S.W.2d 618, 621 (1973)

(quoting *Watkins v. Oaklawn Jockey Club*, 86 F. Supp. 1006, 1017 (W.D. Ark. 1949)) (citing *St.*

*Louis I.M. & S. Ry. Co. v. Waters*, 105 Ark. 619, 152 S.W. 137 (1912)).  Liability does not lie against

a private person who has probable cause to detain the plaintiff.  *See Limited Stores*, 317 Ark. at 83,

786 S.W.2d at 250 ("A merchant may detain, for a reasonable length of time, a person he or she has

reasonable cause to believe is shoplifting.).  *But see Dillard's Dep't Stores, Inc. v. Stuckey*, 256 Ark.

881, 882, 511 S.W.2d 154, 155 (1974) ("It is ordinarily the rule that when the defendant's employee

wrongfully bring's about the plaintiff's arrest by a police officer, the employer's liability is a

question of fact.").

The defendants do not contend that they had sufficient legal authority to detain Millbrook,

nor do they contend that they had probable cause to believe she was shoplifting.  Rather, the

defendants argue that there is no false imprisonment when no force or threats are used and a person

agrees to surrender her own freedom of motion.  In support, the defendants cite two cases: *Pounders*

*v. Trinity Court Nursing Home, Inc.*, 265 Ark. 1, 576 S.W.2d 934 (1979), as well as *Limited Stores*,

317 Ark. 80, 876 S.W.2d 248.  In *Pounders*, a woman sued her nursing home along with her niece

for placing her there.  265 Ark. at 2, 576 S.W.2d at 934-35.  However, there, the plaintiff went to the

nursing home without protest, actually consenting to be placed there by her niece.  *Id.* at 2, 576

S.W.2d at 935.  In *Limited Stores*, the plaintiff was shopping in the defendant's store, and the alarm

sounded as she exited.  317 Ark. at 81, 876 S.W.2d at 249.  Two female employees from the store

approached her and asked her to return to the store, stating that the reason was because when she left

the buzzer went off.  *Id.*  The plaintiff decided to go back because she knew she "hadn't done

anything."  *Id.* at 81-82, 876 S.W.2d at 249-50.  When she returned and neither she nor any of her

belongings set the alarm off, the employees told the plaintiff she was free to go. *Id.* at 82, 876 S.W.2d at 249.

Neither of these cases justifies a grant of summary judgment here.  In neither case was the plaintiff compelled to go somewhere against her will and subsequently confined and detained in that place for a period of time.  In *Limited Stores*, the case with the facts more similar to those here, two female employees approached the plaintiff, requested that she return to the store with them, and also informed her of the reason for their request.  Here, Millbrook has provided evidence that she was approached by a man wearing a Jonesboro Police Department Uniform who was also carrying police gear, including a police radio, pepper spray, handcuffs, and a firearm.  The officer physically took a hold of Millbrook and instructed her to come with him.  When she inquired why, he merely repeated the statement that she must come with him.  The officer then escorted her to an enclosed room, where Millbrook was confined and detained until he allowed her to leave.  Millbrook has provided sufficient evidence for a jury to reasonably conclude that she was restrained by threat of force, which intimidated her into compliance with orders, and that she was subsequently compelled into an enclosed space against her will and detained there for a period of time.  The defendants' motion for summary judgment on Millbrook's claim for false imprisonment is therefore denied.

Lastly, the defendants have moved for summary judgment on the plaintiff's claim for punitive damages.  In Arkansas,

> In order to recover punitive damages from a defendant, a plaintiff has the burden of proving that the defendant is liable for compensatory damages and that either or both of the following aggravating factors were present and related to the injury for which compensatory damages were awarded:
>
> (1) The defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in

injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred;

(2) The defendant intentionally pursued a course of conduct for the purpose of causing injury or damage.

ARK. CODE ANN. § 16-55-206. "Negligence, however gross, will not support . . . an award" of punitive damages in Arkansas. *Edwards v. Stills*, 335 Ark. 470, 484, 984 S.W.2d 366, 373 (1998). "'The general rule is that exemplary or punitive damages will never be allowed where the false imprisonment was brought about in good faith, without malice in fact or in law, and there is no element of wantonness or oppression on the part of the party making the arrest.'" *Kroger Grocery & Baking Co. v. Waller*, 208 Ark. 1063, 1067, 189 S.W.2d 361, 363 (1945) (quoting *Mo. Pac. R.R. Co. v. Yancey*, 178 Ark. 147, 10 S.W.2d 22, 24 (1928)). Viewing the facts in the record in the light most favorable to Millbrook, the defendants detained Millbrook in a private area for a period not exceeding one half-hour, at which point she was free to leave, as the defendants had determined that she had not shoplifted any items from Dillard's. There was no formal arrest or prosecution, and aside from the officer's initial approach of Millbrook in the mall, there is no evidence that could be construed as public humiliation. Millbrook has failed to come forward with specific facts showing that there is a genuine issue for trial, as there are no specific facts in the record showing malice, wantonness, or oppression on the part of the defendants. Thus, the defendants' motion for summary judgment on Millbrook's claim for punitive damages is granted.

## CONCLUSION

The defendants' motion for summary judgment is granted in part and denied in part. With respect to Millbrook's claims for alter ego, defamation, invasion of privacy, negligence, outrage, assault, battery, past and future medical bills, punitive damages, and violations of her rights under

42 U.S.C. §§ 1981 and 1982, the defendants' motion for summary judgment is granted.  With respect to Millbrook's claim for false imprisonment, the defendants' motion for summary judgment is denied.  Docket #30.

     IT IS SO ORDERED this 3rd day of March, 2008.


_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE